May it please the Court, I'm Dennis Balski and I represent Mr. Tyson. I'd like to try to reserve two minutes for rebuttal. I will watch the clock myself. I'm going to focus on the question of whether or not there was an interrogation and time permitting. I will then address the second question, which is whether or not the State Court's adjudication of the merits of that question was contrary to clearly established Supreme Court law. The full facts and legal principles... Just make sure I understand. The second question, somewhere in there you're going to deal with the question of whether there was an effective waiver. I don't think I'm going to have time, but I will... If there was an effective waiver, it really doesn't matter if there was an interrogation or not. Well, my position, and I feel a strong one, is that there wasn't a waiver, that the State didn't meet its burden of establishing a waiver. The State didn't meet its burden of establishing a waiver.  The State didn't meet its burden of establishing a waiver. Does he deny that he understood what he was told and what he declined to sign? Well, actually, he did to the officer himself. He said that he believed that because he was representing himself, nothing he said could be admitted against him. So we have very clearly reflected in the record his misunderstanding of the Miranda warnings, and we have the officer saying, yeah, he misunderstood, but I didn't see it as my obligation to tell him anything different. So unlike most records, we have a very clear record here showing that my client did not understand the Miranda warnings, and therefore there was not a knowing, intelligent, involuntary waiver. I was going to address the end, and I'm happy to address that more if you would like. I was going to address interrogation because the State's position has been we never get to the Miranda warning question because there was no interrogation, and we also had the State courts holding that the questioning was permissible, no interrogation. My position all along has been under Innis that there is express questioning here, and therefore there was an interrogation. The State. But all expressed questioning is not interrogation, right? Well, that gets us to the 28J letter cited by the State a couple days ago, which says that custodial questions constitute interrogation when, under all the circumstances involved in a given case, the questions are reasonably likely to elicit an incriminating response. And that, then, is the more specific question. And in the case cited in the 28J letter, the Booth case, which is the leading case on that, the Court, this Court sets out three factors that cut in our favor. The first one is you look to the relationship of the question asked to the crime suspected. Second, you look at the subjective intent of the police officer conducting the question questioning. And third, even a relatively innocuous question may, in light of the unusual susceptibility of a particular suspect, be reasonably likely to elicit an incriminating response. If we look at those three, all three weigh in Mr. Tyson's favor. First of all. Well, first of all. Sure. For the record, what was the interrogation of the question? Well, the question that I'm about to ask. Just one question, right? Yes. And that question was whether a 6-year-old boy named Jay was his son. And the reason that that is linked to the crime, of course, is that the officer came there to investigate an allegation that Mr. Tyson had sexually abused his son. That was the very thing. He was there to investigate. When we go to the subjective intent of the police, the detective made it very clear that he was there to conduct an interrogation. He said he went, quote, to the jail to obtain a statement from Mr. Tyson regarding new allegations of sexual abuse, those involving Mr. Tyson's son. And then we have questions and answers that even hone it further. Question. And when you say you were there to contact him, the purpose of the contact is to hopefully question him, get some response out of him. Correct? Answer. And to inform him of the nature of the new allegation. Question. In order to get some response from him about the new allegation as part of your investigation. Correct? Answer. Yes. Do you think he asked that question in anticipation of the response that he got? Yes. They already. Why do you say that? Well, because they had already done an investigation. There had already been a statement given by the boy to expert witnesses. The expert witness had made a diagnosis, the diagnosis of sex abuse. So they had the diagnosis. They were going to charge him as a result of that. And this question just brings out. Tyson didn't. Tyson wasn't aware of any of the background that had taken place. I'm sorry. Tyson was not aware of any of that, of the workup that the officer had been involved in. Yeah, that's true. Correct? That's true. And the statement that you're concerned about comes later in the, during the course of the interview. Is that right? It does. But there's, I guess for lack of a better term, there's no break in the chain. Because what happens is, and this gets to the susceptibility question. As soon as he asks him that question, Mr. Tyson's eyes start to tear up and he gets emotional. And he asks whether his son's okay. And the officer says yes. And then he asks him if it's about the juvenile court proceedings where they're taking away his kids. And the officer says no, no, it's about another criminal investigation. And as soon as he says it's about a criminal investigation, that's when we have the admission that's used against him. And that dovetails exactly with what the officer testified to, that he was there to inform him of it in order to get a response from him about the new allegation. So it's as soon as he says I'm here about the new allegation, out comes the response. So it directly flows from when he asks the incriminating question and ends when he tells him no, it's a criminal investigation, not the juvenile court one. And as far as the unusual susceptibility of Mr. Tyson, we know he'd been through a trial involving allegations brought by his daughter, for which he had had a mistrial and some acquittals, that he was facing a new trial. He was being held in custody at the time. He believed and told the detective that because he represented himself at that time, he didn't believe anything could be used against him that he said. There were juvenile court proceedings pending in which they were attempting to take his children away. And as we know, he was worried about his son because he became tearful when he was asked about him. So then the follow-up question is, okay, well, so did the state court's ruling against him on interrogation cut directly against established Supreme Court law? That takes us back to Rhode Island v. Innis. It's clear that the court didn't take Innis into account or apply the test at all because you can look at the thinking process of the court. He set it out. He said if that question was impermissible, quote, then most of the court what court are you talking about? I'm talking about the state circuit court judge who denied the motion to suppress. Okay. He said if it's impermissible, quote, then most questions asked by the police, a good part of it would be illegal, end quote. Then he says, quote, were you at the scene? Were you at the accident scene? Were you at the plaid pantry when it was robbed? I mean, basically, police interrogation would drop by a good 50 percent. Those were his comments. Well, obviously, if someone's being questioned about a plaid, whether they were present at a plaid pantry robbery and they're a suspect, that's interrogation. It's also permissible questioning if there's been a Miranda warning, no problem. So the court did not see the distinction between, quote, permissible questioning and, quote, interrogation under Innis. The court didn't focus on that at all, and its ruling was contrary to Innis. Tyson was pretty talkative with the officer, right? Well, actually, yeah. He was talkative when the officer showed up. He was hostile to him. The officer had to sit him down and scream back. That's just a voluntary response to the situation, I mean, to the question. Well, no, it wasn't. It was because there was express questioning and it was made in response to the express questioning, and the officer went there to express the question and to gain an admission. That's why. Well, there was only one. There was one question here, right? Yes. And how far along in the conversation did he make this statement? Well. Was it just within a minute? You don't know time-wise, but it went exactly as I described it to you, starting with that question, the question back to him, back and forth. It's a criminal investigation, and out it came. It wasn't a long period. I'm guessing a minute sounds about right. As I said, I don't think there was any break in the chain from that question until the admission. And I'll reserve that. Did you want to save some time for this? Yes, I did. Okay. Thank you. May it please the Court? Lee Salmon, appearing on behalf of the State of Oregon. The main issue that this Court has to decide is whether the criminal trial court's application of Innis was objectively unreasonable. In other words, whether the conclusion the trial court reached, I'm talking about the state trial court, was objectively unreasonable in light of established Supreme Court case law. Not whether it was actually correct, and not whether this court would reach a different conclusion on the same set of facts. It's only whether the trial court's conclusion was objectively unreasonable. What about Mr. Blofsky's statement that, well, as far as he can tell, the state trial court wasn't even aware of Innis? So how could it apply? I believe Innis is cited in the state trial court's ruling. I would have to look back through the transcript to find the exact location. But, frankly, it sticks out in my head because I believe it was misspelled in the transcript. But it is cited in there, and I believe the trial court was aware of Innis. And its ultimate conclusion that this single question, is a six-year-old boy named J.T. your son, was not interrogation, is not an objectively unreasonable application. You're saying it was not interrogation, it was not an express question? It is an express question in the sense that it is a question. But your argument is it didn't qualify as interrogation. That's correct, Your Honor. And I don't believe there's any Supreme Court case that has held that every question an officer asks constitutes interrogation. To constitute interrogation within the meaning of Miranda, it has to be reasonably likely to elicit an incriminating response. Here, everyone knew that J.T. was petitioner's son. It was an introductory, innocuous introductory statement, as the trial court reasonably concluded. After that, the officer didn't get a word in edgewise, and he never asked another question. And I believe that the state trial court's ruling was objectively reasonable for a second reason, and that was his statement that he sought to suppress wasn't even in response to the question. It did come later in time, as Mr. Balski has pointed out, but it was actually in response to a series of back-and-forth questions that the trying to figure out why the officer there, what his questioning was going to be about, or what the conversation would be about. And it was in response to the officer's answer to petitioner's question that he volunteered the statement that he sought to suppress. I mean, the officer was there at some point to conduct an interrogation, was he not? He was, but I don't Your argument is that he didn't get to that point. That's correct. That it was during the initial preliminaries or the greetings or this confirmation of the fact that everybody actually knew that suddenly the dam breaks and the information pours out. Is there a reason for us to draw a line there, though? I mean, the officer obviously understood his purpose to be there. He gave the Miranda warnings. He obtained what he thought was a waiver. At that point, I don't know that the officer's focus was on whether or not this particular question is interrogation. Why is it we should say that the requirements of Miranda don't apply yet when the officer was there plainly with the intent of doing what Miranda was intended to protect? Well, in response to your question, Your Honor, I have two comments, the first one being that I don't think the officer's intent or the officer's objective controls. I don't believe that's what Miranda requires. But anybody looking from the outside would have understood. An objective observer would understand that was the purpose of the officer's presence. That is correct, Your Honor. The second, which brings me to my second point, which is I don't think the role of this Court is necessarily to draw a line anywhere. The role of this Court is simply to say, was the state trial courts ruling an objectively unreasonable application of INIS? That's Petitioner's burden to carry. And if it was not an objectively unreasonable application, even if it was clear error, then this Court still must affirm because of the posture that we're in at this juncture. But even if it were interrogation, Petitioner waived his rights. The officer advised him of his Miranda rights, and he knowingly and intelligently waived those rights. When you say intelligently, it's obvious he had a misunderstanding of what Miranda was, right? I don't think that's true. I think he understood what Miranda was. I think he had a misunderstanding. Why did he think, you know, whatever he said could not be used against him then? I think he misunderstood the implications of self-representation. At the core of Miranda is not necessarily that the statements cannot be used against you. That's the remedy for a violation. The core of Miranda is that you cannot be compelled to testify against yourself. If you wish to remain silent, you may. And he clearly knew that he did not have to talk to the officer. In fact, he was picking and choosing from the beginning of the conversation. If this is about my stepdaughter, I don't want to talk about that.   Jol Albert, when he s residence and decided to make a claim against Medina at the court that he would sue her, he was simply confused about how his self-representation fit into that equation. But even if this court were to first conclude that the State trial courtapplied in an objectively unreasonable manner and conclude the petitioner Well, how did the, I still don't see where and how the trial court applied in this. Can you show me how, how did the trial court apply in this? I don't see it anywhere. The trial, and I will admit that the trial court was not as eloquent as it could have been in stating its reasoning on the record. But it concluded that this was an introductory question, essentially. Granted, the rest of its statements, they are what they are. They're in the record. As for the courts, and I apologize, I don't have the exact citation in front of me. I would be happy to locate that for the court and supply it in a supplemental memorandum if that would be of assistance. No, but I mean, you, you're the one who's arguing and you said, well, you know, the State court applied in this and applied it in a not unreasonable manner. I just don't see where the State trial court applied it at all. You can't point to you can't point to any part of record to show me this is what he said. And this is the application of Innis? There is a reference to Innis in the transcript. Yes, Your Honor. But it's by one of the counsel, Mr. Gafferty. The point being that the trial court was aware of Innis, the fact that it did not cite it or reference it in its oral inclusion. Well, you showed me the trial court's reasoning where it applied Innis in a not unreasonable manner in making this ruling. The trial court's reasoning is set forth in the supplemental excerpt of record starting at page 114, I believe. It's relatively short. I guess it might be relevant to this issue is the finding. This is merely a quote from 115-116. Also making a finding, there were no questions. These are volunteered statements. I take it that's what you're pointing us to in terms of this not being a custodial interrogation. There aren't any questions. That's correct, Your Honor. And his statement was volunteered not in response to a question, but in response to the officer's answering a petitioner's own question. So there was no custodial interrogation. But the bottom line is this did not have a substantial and injurious effect on the verdict. This was a two-week trial. It generated almost 2,000 pages of transcript. The fact that the prosecutor during her closing arguments emphasized repeatedly the victim's own testimony. J.T. testified in person, and additional statements of his were offered. He described the abuse in graphic detail, and that is what the prosecutor focused on, not this one statement in isolation. It did come up in rebuttal, but that was in response to petitioner's own statements during closing argument that the state never came to talk to him about these charges. They just charged him, and had they come to speak with him, he could have explained. So at the end of the day, even if the trial court erred, there was no substantial and injurious effect on the verdict. Let me ask you one question, just a procedural matter. Did the state trial court rule on whether he had waived his Miranda rights? No, Your Honor. That issue was procedurally defaulted. It was never raised. The trial court never addressed it. But as I acknowledge in my brief, the state did not raise that as a defense before the district court.     It was never raised before the trial court. It was never raised before the trial court. When you say it was procedurally defaulted, you mean procedurally defaulted by the state? No, Your Honor. By the petitioner. He wasn't arguing that he waived his Miranda rights. Well, he's not going to say, well, yes, I waived my rights. That's what I mean. And you mean it was procedurally defaulted by the state? It was never raised before the trial court. But suffice it to say, the state is not making an issue of that at this time. So the state's not contending waiver. That is correct. All right. Was there any further questions? Wait a minute. But your brief does preference waiver. So is this a departure from a position taken in your brief? I understand the state was not asserting that there was a procedural default by defendant. And I'm not sure how that could have been. But anyway, you're not saying the failure to raise it previously prevents defendant from speaking to the issue of waiver. But I understood from your brief that, in fact, you were arguing that he had waived his right to speak to the issue of waiver. Yes. But you're not saying that he made a knowing, intelligent waiver of his Miranda rights. Yes. We are raising that as an issue, that he knowingly and intelligently ---- But the state court never addressed that issue. That is correct. So there's nothing to defer to. Is that correct? You would still ---- this Court would defer to the factual conclusions of the state trial court to the extent they're applicable. But you're correct ---- On the issue of waiver, on the issue of knowing, intelligent waiver of a Miranda, he didn't make any findings. He, the trial court ---- He didn't say, I find that the defendant understood and made his, you know, all the litany that you go through. That is correct. But the trial court did make one critical factual finding, and that is that the petitioner lacked all credibility. And that is a factual finding that is binding on this Court. No, but in that context, if the issue is properly presented to us, to the Federal Court, then, in effect, the Federal Court has to determine how the state court, if it addressed it, would have addressed it, right? Isn't that what it amounts to? We're sort of de novo on the issue. There's nothing to defer to. My understanding is that the review is de novo. There's nothing to defer to. That is correct. There's never been a state court ruling on whether or not he knowingly and intelligently waived his Miranda rights. And the district court didn't conduct an evidentiary hearing on this particular issue. I do not believe the district court conducted any independent evidentiary  I don't believe the district court did. The district court didn't make any findings on this. I don't believe so. Because the district court, like the state court, concluded that there was no interrogation, so waiver never became an issue. So if there's no interrogation, as you say, the waiver issue is not reached, because Miranda doesn't apply. There's nothing to waive. That is correct, Your Honor. Okay. All right. Thank you. Thank you. I'll end with just one point, and that is this, that I think there's no disagreement, and the state has argued it in its oral argument, that the test is whether or not the question is reasonably likely to elicit an incriminating response. The question was whether a 6-year-old boy named Jay was his son. The answer anticipated, of course, was yes. The answer yes is an incriminating response. And therefore, it was interrogation. Thank you. How was that incriminating? It's incriminating because if I admit that if the little boy says my father sexually abused me, and you ask me am I his father, and I say yes, that's incriminating. It's not really a contested issue, is it? It's not a contested issue that it's his son. You know, I see that question as almost, it's just nothing more than like an icebreaker just to get the conversation going. He already knew it was his son. Right? The detective knew. Everybody knew it. How can it be incriminating? Well, that would be a reason for asking the question would be to gain that admission so there's no doubt you're admitting that you're his father. Was there any question that wouldn't be incriminating in some sense? I mean, I ask, I turn and say are you Richard Paez? He says yes. Most people wouldn't view that as incriminating. But I, in fact, know there's a long criminal history if somebody named Richard Paez, and suddenly this question becomes incriminating. Is that the test, that something that's confirmed, that's obvious to everybody in the conversation becomes incriminating? No. I think that the test is, as they said in Booth, the relationship of the question asked to the crime suspected is relevant. Here the crime suspected is abuse of a son by a father. The question is are you the father of that boy? In that context, yes. Asking whether or not I was at such and such at the plaid pantry when there was a robbery, if I was in there buying milk, isn't really asking me for an incriminating response. But if I'm the suspect who was in the plaid pantry when it was robbed, then it is. So it depends on the context. And here the context is such that that question actually is incriminating. It's as if when you find, you know, if there's mail in your house addressed to you, that's not incriminating. But in a drug case like the first one, if you're suspected of meth and you're the defendant and there are various bills in your name, the government getting your mail with your name addressed on it is a way for them to show that you live there. So it's the specific context of each case. And here I agree. Thank you. We appreciate the arguments by counsel on this case. And the matter is submitted. Thank you. Thank you. Thank you.
judges: Tashima, Paez, Clifton